[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-13951

_____

D. C. Docket No. 99-00335-CV-T-17E

KISSIMMEE RIVER VALLEY SPORTSMAN ASSOCIATION,

Plaintiff-Appellant,

versus

CITY OF LAKELAND,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 10, 2001)**

Before ANDERSON, Chief Judge, EDMONDSON and RONEY, Circuit Judges.

ANDERSON, Chief Judge:

The Kissimmee River Valley Sportsman Association appeals the district court's dismissal of its complaint for failure to state a claim. For the reasons stated below, we affirm.

On February 12, 1999, the Kissimee River Valley Sportsman Association,[1] brought suit under 42 U.S.C. § 1983 against the aptly named City of Lakeland, seeking injunctive and declaratory relief from a city ordinance. The ordinance, section 58-32 of the Lakeland City Code, prohibits the operation of any airboat upon any of the lakes within the city. The Plaintiff claimed that the ordinance violates the Federal Aid in Sport Fish Recreation Act (the "Act"), 16 U.S.C. §§ 777-777k, and the regulations promulgated under it. In particular, it claimed that the Act and regulations create a federal right of equal access for boats with common horsepower ratings and that this right was infringed upon by the airboat restriction. Relying on Harris v. James, 127 F.3d 993 (11th Cir. 1997), the district court concluded that the Act does not create this right and dismissed the complaint. We address the narrow issue of whether the Act and regulations create such a federal right of equal access which may be enforced in an action under § 1983.

We review de novo a dismissal for failure to state a claim, applying the same

--------

[1] This association is a group of approximately 150 recreational boaters and fishermen who use the public lands in and around Lakeland for recreational purposes.

standard used by the district court.  United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc).  We must accept the allegations set forth in the complaint as true for purposes of a motion to dismiss.  See id.

The Plaintiff argues that it and its members have a federal right of equal boating access to the Lakeland lakes regardless of the type of boat used and that Lakeland's ordinance prohibiting airboats violates this right.  The Plaintiff argues that this right can be found in the Act and the Act's interpretative regulations.  The Act provides funds for fish restoration and management projects to coastal states including Florida.  States desiring such funds must prepare and submit "a comprehensive fish and wildlife resource management plan which shall insure the perpetuation of these resources for the economic, scientific, and recreational enrichment of the people."  16 U.S.C. § 777e(a)(1).  The Secretary of the Interior is authorized to finance up to 75% of such plans.  See id.  The Act requires Florida to spend 15% of funds received through the Act on "the acquisition, development, renovation, or improvement of facilities . . . that create, or add to, public access to the waters of the United States to improve the suitability of such waters for recreational boating purposes."  16 U.S.C. § 777g(b)(1).  To establish the right of equal access, the Plaintiff points in particular to 50 C.F.R. § 80.24, which provides in relevant part:

> The State shall allocate at least 10 percentum of each annual apportionment under Federal Aid in Sport Fish Restoration Act for

recreational boating access facilities. <u>All facilities constructed, acquired, developed, renovated, or maintained (including those existing structures for which maintenance is provided) must be for the purpose of providing additional, improved, or safer access of public waters for boating recreation</u> as part of the State's effort for the restoration, management, and public use of sport fish. Though a broad range of access facilities and associated amenities can qualify for funding under the 10 percent provision, <u>power boats with common horsepower ratings must be accommodated</u>, and, in addition, the State must make reasonable efforts to accommodate boats with larger horsepower ratings if they would not conflict with aquatic resources management.

(emphasis added). This regulation, the Plaintiff argues, binds recipients of federal funding because 50 C.F.R. § 80.3 provides that "[a] State may participate in the benefits of the Act[] only after it has passed legislation which assents to the provisions of the Act[] . . ." and the State of Florida has so assented. <u>See</u> Fla. Stat. Ann. § 372.7701 (West 2000) ("The state hereby assents to the provisions of the Federal Aid in Fish Restoration Act of August 9, 1950, as amended."). The Plaintiff claims that boat launch facilities in the City of Lakeland received federal funds under the Act and therefore the city is bound by these regulations. The Plaintiff contends that the statute providing for public access, in conjunction with the regulation requiring access facilities to accommodate boats with common horsepower ratings, creates a federal right of equal access for boats with common horsepower ratings. For purposes of this appeal only, we assume <u>arguendo</u>, but expressly do not decide, that the regulation

purports to require equal access for boats with common horsepower ratings.[2]

Like the district court, we begin our analysis with Harris v. James, 127 F.3d 993 (11th Cir. 1997). Harris involved a regulation, binding on all States participating in Medicaid, requiring State plans to specify that the Medicaid agency will ensure necessary transportation for recipients to and from providers. In Harris, we rejected the approach of finding an enforceable "'federal right' in any regulation that in its own right meets the three-prong 'federal rights' test."[3] Id. at 1008. We also rejected the approach of "finding enforceable rights in any valid administrative interpretation of a statute that creates some enforceable right." Id. Rather, we concluded that "if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision, we think the regulation is too far removed from Congressional intent to constitute a 'federal right' enforceable under § 1983." Id. at 1009. Ultimately, in Harris, we concluded that "the nexus between the regulation and

---

[2]We express considerable doubt that the regulations should be construed to require equal accommodation of airboats, because the regulations appear to require accommodation only of boats that are suitable for a particular body of water. See 50 C.F.R. § 80.1(1) ("Common horsepower is defined as any size motor that can be reasonably accommodated on the body of water slated for development."). In light of our holding, however, we do not have to decide the meaning of the regulations.

[3] In Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509, 110 S. Ct. 2510, 2517 (1990), the Supreme Court set out this three-prong test: (1) is the provision intended to benefit the plaintiff? (2) does the provision impose a binding obligation on the governmental unit? and (3) is the interest too vague and amorphous for judicial enforcement?

Congressional intent to create federal rights is simply too tenuous to create an enforceable right to transportation." Id. at 1010.

Turning to the instant case, we think it likewise lacks the necessary nexus. As noted above, the Act itself only requires States to spend 15% of funds received through the Act on facilities that "create, or add to, public access to the waters of the United States to improve the suitability of such waters for recreational boating purposes." 16 U.S.C. § 777g(b)(1). The regulation at issue has two parts. First, the regulation provides that 10% of these funds be allocated for recreational boating access facilities. See 50 C.F.R. § 80.24. Second, the regulation states, "Though a broad range of access facilities and associated amenities can qualify for funding under the 10 percent provision, power boats with common horsepower ratings must be accommodated, and, in addition, the State must make reasonable efforts to accommodate boats with larger horsepower ratings if they would not conflict with aquatic resources management." Id. The Plaintiff's argument for equal access for airboats with comparable horsepower ratings is necessarily grounded in this second part of the regulation because neither the Act itself nor other parts of the regulations suggest equal accommodation of power boats with common horsepower ratings. Although the Act may well contemplate improvement of access generally for recreational boating, it does not create an equal access right. The part of the

6

regulation, which Plaintiff contends does so, is too far removed from Congressional intent to create this enforceable right itself.

Indeed, we believe that this conclusion follows a fortiori from Harris v. James. There, a provision of the Medicaid Act required that medical assistance "shall be furnished with reasonable promptness" and also included a provision requiring comparable medical assistance as between the "categorically needy" and the "medically needy." Harris, 127 F.3d at 1011. We held that the regulation requiring the States to provide necessary transportation for Medicaid recipients to and from providers was too far removed from the Congressional intent (either with respect to prompt delivery of medical assistance or with respect to requiring comparable assistance) to create an enforceable right under § 1983. See id. at 1012. The regulation in the instant case–which we assume arguendo requires equal access for boats with common horsepower ratings–bears an even more tenuous relationship to the statutory provision–which requires only that funds be spent on facilities that "create, or add to, public access to the waters of the United States to improve the suitability of such waters for recreational boating purposes." 16 U.S.C. §777g(b)(1). Nothing in the statute suggests a right based on equality or comparability. In fact, even more clearly than in Harris, the instant regulation imposes new and "distinct obligations" not found in the statute itself, and thus is "too far removed from the

7

Congressional intent to constitute a 'federal right' enforceable under § 1983." <u>Harris</u>, 127 F.3d at 1009. The instant regulation goes far beyond merely further defining or fleshing out the context of any "federal right" found in the statute itself. <u>Id.</u>

Thus, we hold that the right of equal access that the Plaintiff wishes to enforce under § 1983 is not a federal right so enforceable. Accordingly, we conclude that the Plaintiff has failed to state a claim.[4]

For the reasons stated above, we

**AFFIRM**.

---

[4] The Plaintiff points to the holding of <u>Buckley v. City of Redding, Cal.</u>, 66 F.3d 188 (9th Cir. 1995). In <u>Buckley</u>, the Ninth Circuit held that the Act does confer a right of equal access for power boats with common horsepower ratings enforceable under § 1983. We do not find this case persuasive here. The Ninth Circuit apparently applied the three-prong test, <u>see</u> <u>supra</u> note 3, exclusively to the regulations promulgated under the Act, 50 C.F.R. §§ 80.3, 80.5(b), 80.21, and 80.24, and concluded that they created the enforceable right. <u>See id.</u> at 192. This is the very approach rejected in <u>Harris</u>. <u>See Harris</u>, 127 F.3d at 1008. The Plaintiff emphasizes the reasoning of <u>Buckley</u> that the State's obligation to follow the regulations was contractual in nature and therefore created the enforceable right. <u>See Buckley</u>, 66 F.3d at 192 ("The state's obligation is in the nature of a contract and is clearly binding."). Even if the regulations are binding, they do not necessarily create a right enforceable through § 1983. The <u>Harris</u> Court recognized that the regulation may be a valid interpretation of the Congressionally enacted provisions while still being too far removed to support a conclusion that Congress has unambiguously conferred a federal right enforceable under § 1983. <u>See Harris</u>, 127 F.3d at 1012. Additionally, the Ninth Circuit, unlike the <u>Harris</u> Court, did not have the benefit of <u>Blessing v. Freestone</u>, 520 U.S. 329, 117 S.Ct. 1353 (1997), the Supreme Court's latest case in this area.